FILED BY _____ D.C.

97 JUL 25 PM 1:39

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

9 - 6892

)
SECURITIES AND EXCHANGE COMMISSION,   )
                                      )    CIVIL ACTION NO.
                        Plaintiff,    )
                                      )    **CIV-ZLOCH**
v.                                    )
                                      )    COMPLAINT FOR      MAGISTRATE JUDGE
MITCHELL A. HAMMER and                )    INJUNCTIVE AND            SELTZER
JOSEPH LETZELTER, JR.,                )    OTHER RELIEF
                                      )
                        Defendants.   )
_____   )

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") alleges as follows:

1.     This is an action to enjoin two former corporate officers of Sheffield Industries, Inc. ("Sheffield"), a now defunct South Florida public corporation, from violating the antifraud, financial recordkeeping, and reporting provisions of the federal securities laws, and to bar these defendants -- who used their positions as corporate officers to defraud investors -- from serving as officers or directors of any public company.

2.     For nearly two years, defendants Mitchell A. Hammer ("Hammer"), Sheffield's then chief executive officer, and Joseph Letzelter, Jr. ("Letzelter"), Sheffield's then comptroller, perpetrated a massive fraud on investors by maintaining two sets of books and by filing materially false financial reports with the SEC on Sheffield's behalf. During the period June 1991 - January 1993, Sheffield's SEC filings overstated accounts receivable and inventory by as much as 40%, and falsely stated that Sheffield had complied with a critical loan covenant from a principal lender when, in fact, it was in default thereunder.

3.    Hammer, with Letzelter's assistance, orchestrated the scheme by causing Sheffield to keep two sets of books and records: a secret set which accurately reflected the company's deteriorating financial condition, and a public set which fraudulently overstated the company's financial condition.  Hammer also uttered materially false and misleading statements to the public regarding Sheffield's anticipated revenues.

4.    Hammer's and Letzelter's activities resulted in unknown losses to investors.  Indeed, as a direct result of their fraud, Sheffield went into bankruptcy.  Hammer and Letzelter pleaded guilty to criminal securities fraud charges and will or have been incarcerated as a result thereof.

5.    Accordingly, permanent injunctive relief and an officer and director bar is required to ensure that these defendants never again defraud investors by lying about the financial condition of public companies.

## DEFENDANTS

6.    Defendant Mitchell A. Hammer, age 40, was Sheffield's chief executive officer, president, and secretary from approximately February 1990 to May 1993. Hammer also became a director of Sheffield in December 1989.  At all times material hereto, Hammer beneficially owned and controlled Sheffield, and was therefore a "control person" of Sheffield pursuant to Section 20 of the Securities Exchange Act of 1934 ("Exchange Act").

7.    Joseph Letzelter, Jr., age 39, was Sheffield's controller from approximately June 1990 to March 1993.  Letzelter had been

- 2 -

licensed as a certified public accountant in the State of Florida through 1987.

## OTHERS

8.    Sheffield Industries, Inc., a Miami, Florida hosiery manufacturer, was incorporated in New Jersey in 1955 and re-incorporated in Florida in 1988.  On January 20, 1993, Sheffield filed a petition for reorganization in the Bankruptcy Court for the Southern District of Florida under Chapter 11 of the Bankruptcy Code.  On August 20, 1993, the Bankruptcy Court ordered Sheffield to liquidate under Chapter 7 of the Bankruptcy Code.

9.    Michael Mandelblatt ("Mandelblatt"), deceased since September 1996, was Sheffield's vice-president and chief financial officer from approximately February 1990 to May 1993, and he also served on Sheffield's board of directors.

## JURISDICTION

10.    This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b) and 77v(a), and pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.

## RELATED CRIMINAL PROCEEDINGS

11.    The United States Attorney for the Southern District of Florida criminally prosecuted defendants Hammer and Letzelter for their securities fraud in connection with Sheffield.  See U.S. v. Hammer, et al., Case No. 95-367-CR-Ferguson (S.D. Fla.).  Both Hammer and Letzelter ultimately pled guilty and were convicted of securities fraud on facts forming the basis of this action, and

were sentenced on February 28, 1997 and December 31, 1996, respectively. The facts underlying the SEC's Complaint overlap the facts supporting the criminal prosecution and guilty pleas entered against defendants Hammer and Letzelter.

<u>**MISREPRESENTATIONS AND OMISSIONS**</u>

12. In June 1991, Sheffield filed a Form S-18 with the SEC to register an initial public offering of common stock and warrants, through which it received $3,728,000 in net proceeds. Sheffield's common stock commenced trading on NASDAQ at $11.00 per share on August 13, 1991.

13. During the period June 1991 - January 1993, Hammer signed the following Sheffield SEC filings, all of which contained materially false and misleading statements:

- Registration statement on Form S-18 (dated and received June 24, 1991);

- Form 10-K for the fiscal year ended June 28, 1991 (received November 12, 1991);

- Forms 10-Q for the quarters ended September 27, 1991, December 27, 1991, and March 27, 1992 (received November 18, 1991, February 10, 1992, and May 11, 1992, respectively);

- Prospectus dated January 28, 1992 (received January 30, 1992);

- Form 8-K dated January 25, 1993 (received January 26, 1993), and Amendment No. 1 to Form 8-K dated January 25, 1993 (received January 29, 1993); and

- Registration statement on Form S-1 (dated and received December 10, 1991 and August 3, 1992), and Amendment No. 1 to registration statement on Form S-1 (dated and received January 24, 1992.

### Two Sets of Accounting Records -- Overstatement of Accounts Receivable and Inventory

14. From at least June 1991 through January 1993, Sheffield maintained two sets of accounting records -- a secret set and a public set. Sheffield's public records included, among other things, its financial statements filed with the SEC. Sheffield's secret internal accounting records reflected its true financial condition. Hammer and Letzelter actively participated in the creation and/or maintenance of Sheffield's fraudulent financial records and knew the false nature of the records.

a. Sheffield's public accounting records contained bogus invoices "billed" to customers and used to support its accounts receivable, and overstatements of its valuation of inventory, resulting in overstatements of Sheffield's assets by up to 40% in its filings with the SEC. As of June 1993, accounts receivable and inventory in the public records were approximately $5,000,000 higher than reflected in the secret set of books.

b. Inventory for the fiscal year ended 1992 was also overstated by $3,000,000. Approximately $1,000,000 of the overstatement was attributable to a computer program adjustment that improperly increased the cost of inventory. Also, Sheffield purchased inventory from April through June 1992 from several entities at steep discounts. Sheffield,

- 5 -

however, included these discounted items in its inventory at their original full price.  Lastly, Sheffield's inventory improperly included substantial amounts of obsolete and "slow moving" items.

15.  In addition, a fiscal audit for 1992 was initiated by Sheffield's independent auditors but was not completed because Sheffield failed to make its accounting records available. Letzelter falsely told the auditors that Sheffield's computerized financial records were destroyed by a power failure.  In fact, no computer data was destroyed by the purported power surge -- this was a contrived incident, a pretext for Sheffield to hide its true financial condition from the auditors.

### Overstatement of Profits

16.  In a July 6, 1992 newswire report, Hammer announced anticipated revenues for Sheffield for the fiscal year ended 1992 to be approximately $36 million, with anticipated net profits of approximately $.75 per share on 2.6 million average shares outstanding (or approximately $1.95 million in net profits.) However, on December 17, 1992, Sheffield reported losses of $1,800,000.  Hammer had no reasonable basis for Sheffield's July 1992 profit projection.

17.  In fact, Hammer, as a control person and as one of the principal orchestrators of the fraud, had direct knowledge at the time of the projection that Sheffield utilized two sets of books and records to fraudulently inflate its deteriorating financial condition.  Accordingly, he knew, or was reckless in not knowing, that the projection had no reasonable basis in fact.

## The Loan Covenant

18. Continental Bank & Trust of Illinois ("Continental") was a major secured lender to Sheffield. Continental's loan agreement with Sheffield contained a covenant requiring Sheffield to maintain, among other things, certain financial ratios. Under the agreement, the failure to maintain the specified ratios was deemed to be a default, allowing Continental the option of calling the loan.

19. In its June 1991 Form S-18, signed by Hammer, Sheffield stated with respect to the loan covenant that "No default exists, and no event has occurred which with notice or lapse of time, or both, would constitute a default, in the due performance and observance of any term, covenant or condition of any ... bank loan or credit agreement ...". This was untrue. According to the liabilities-to-net-worth ratio set forth in the loan covenant, as applied to the public information disclosed in Sheffield's June 1991 Form S-18, the company was in violation of the covenant. Although the necessary financial data to establish the calculation was publicly available in the Form S-18, Sheffield's investors did not have access to the liabilities-to-net-worth ratio set forth in the loan covenant.

20. As the chief executive officer who orchestrated the financial fraud, Hammer was at all times knowledgeable of the true financial condition of the company. Accordingly, he knew, or at the very least was reckless in not knowing, that a condition of default existed and that the Form S-18 was therefore false.

Indeed, one of the primary motives behind the scheme was to prevent the lender, Continental, from calling the loan.

### FAILURE TO IMPLEMENT ADEQUATE INTERNAL ACCOUNTING CONTROLS AND TO PROPERLY MAINTAIN BOOKS AND RECORDS

21.   Sheffield, through Hammer, Letzelter and others, failed to make and keep books and records which accurately reflected its financial and accounting transactions, and failed to maintain a system of internal accounting controls sufficient to provide assurances that accounting transactions were recorded as necessary to permit the proper preparation of financial statements in conformity with GAAP.   Specifically, as previously discussed, Sheffield maintained two sets of accounting records, including one set which relied on fictitious invoices to support its material overstatements of revenues, and intentionally overstated its inventory.

### COUNT ONE -- FRAUD

### VIOLATIONS OF SECTION 17(a)(1) OF THE SECURITIES ACT OF 1933

22.   Paragraphs 1 through 21 are hereby reincorporated and realleged by reference.

23.   Between June 1991 -- January 1993, defendants Hammer and Letzelter, directly or indirectly, by the use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, in the offer or sale of securities, as described herein, knowingly, willfully and/or recklessly employed devices, schemes or artifices to defraud, through acts which included, but are not limited to, the activities described in paragraphs 1 through 20, above.

24. By reason of the foregoing, defendants Hammer and Letzelter violated and, unless enjoined, will again violate Section 17(a)(1) of the Securities Act of 1933 ("Securities Act").

**COUNT TWO -- FRAUD**

**VIOLATIONS OF SECTION 10(b) OF THE SECURITIES
EXCHANGE ACT OF 1934 AND RULE 10b-5, THEREUNDER**

25. Paragraphs 1 through 24 are hereby reincorporated and realleged by reference.

26. Between June 1991 -- January 1993, defendants Hammer and Letzelter, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of securities, as described herein, knowingly, willfully and/or recklessly: (i) employed devices, schemes or artifices to defraud; (ii) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaged in acts, practices or courses of business which operated, or would have operated as a fraud or deceit upon any person in connection with the purchase or sale of such securities, through acts which included, but are not limited to, making the misrepresentations and omissions of material fact described in paragraphs 1 through 20, above.

27. By reason of the foregoing, defendants Hammer and Letzelter violated and, unless enjoined, will again violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, thereunder.

## COUNT THREE -- FRAUD

### VIOLATIONS OF SECTIONS 17(a)(2) AND 17(a)(3) OF THE SECURITIES ACT OF 1933

28.   Paragraphs 1 through 27 are hereby reincorporated and realleged by reference.

29.   Between June 1991 -- January 1993, defendants Hammer and Letzelter, directly or indirectly, by the use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, in the offer or sale of securities, as described herein:

(a)   obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(b)   engaged in transactions, practices, or a course of business which operated as a fraud and deceit upon the purchasers of such securities, through acts which included, but are not limited to, the activities described in paragraphs 1 through 20 above.

30.   By reason of the foregoing, defendants Hammer and Letzelter violated and, unless enjoined, will again violate Sections 17(a)(2) and 17(a)(3) of the Securities Act.

## COUNT FOUR

### DEFENDANT HAMMER'S
### RECORDKEEPING VIOLATIONS OF SECTIONS 13(b)(2)(A),
### 13(b)(2)(B), AND 13(b)(5) OF THE SECURITIES EXCHANGE
### ACT OF 1934 AND RULE 13b2-1

31.  Paragraphs 1 through 30 are hereby reincorporated and realleged by reference.

32.  Section 13(b)(2)(A) of the Exchange Act requires issuers with a class of securities registered under Section 12 of the Exchange Act to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the issuer's assets.   Section 13(b)(2)(B) of the Exchange Act requires issuers with a class of securities registered under Section 12 of the Exchange Act to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are properly executed and recorded, access to assets is restricted, and at appropriate intervals assets are accounted for.

33.  At all relevant times, Sheffield was an issuer subject to these recordkeeping requirements.

34.  Between June 1991 -- January 1993, Sheffield, under Hammer's control, violated Sections 13(b)(2)(A) and (B) of the Exchange Act by, among other things, failing to make and keep accurate books and records and maintain a system of internal accounting controls sufficient to provide reasonable assurances that its financial statements were prepared in accordance with generally accepted accounting principles.

35.  Rule 13b2-1 promulgated under Section 13(b) of the Exchange Act prohibits any person from falsifying any book or record subject to Section 13(b)(2)(A).

36.  At all relevant times, Sheffield was an issuer subject to these recordkeeping requirements.

37.  Between June 1991 -- January 1993, defendant Hammer violated Rule 13b2-1 by falsifying invoices to support Sheffield's material overstatement of revenues and its intentional overstatement of inventory in Sheffield's financial and accounting records.

38.  Section 13(b)(5) of the Exchange Act prohibits persons from knowingly to circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account described in Section 13(b)(2) of the Exchange Act.

39.  At all relevant times, Sheffield was an issuer subject to the recordkeeping requirements of Section 13(b)(2) of the Exchange Act.

40.  Between June 1991 -- January 1993, by reason of his foregoing acts and practices, defendant Hammer violated Section 13(b)(5).

41.  By reason of the foregoing, defendant Hammer violated, and, unless enjoined, will again violate Sections 13(b)(2)(A), 13(b)(2)(B), and 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder.

## COUNT FIVE

### DEFENDANT HAMMER'S FINANCIAL REPORTING
### VIOLATIONS OF SECTION 13(a) OF THE SECURITIES EXCHANGE
### <u>ACT OF 1934 AND RULES 13a-1, 13a-11, 13a-13, AND 12b-20</u>

42.   Paragraphs 1 through 41 are hereby reincorporated and realleged by reference.

43.   Section 13(a) of the Exchange Act requires all issuers subject to the reporting requirements of the Exchange Act to file periodic and other reports with the SEC containing such information as the SEC's rules prescribe.   Rules 13a-1, 13a-11, and 13a-13, promulgated pursuant to Section 13(a), require issuers to file with the SEC accurate annual, current, and quarterly reports, including accurate disclosures of their revenues, income, and net earnings. Rule 12b-20 requires the issuers of securities registered under Section 12 of the Exchange Act to add to any required information in a statement or report any further material information.

44.   At all relevant times, Sheffield was an issuer subject to these reporting requirements.

45.   Between June 1991 -- January 1993, Sheffield, under Hammer's control, violated Section 13(a) of the Exchange Act and Rules 13a-1, 13a-11, 13a-13 and 12b-20 thereunder by filing with the SEC materially false financial and informational statements for Sheffield in periodic and current reports on Forms 10-K, 10-Q, and 8-K.

46.   By reason of the foregoing, defendant Hammer violated, and, unless enjoined, will again violate Section 13(a) of the Exchange Act and Rules 13a-1, 13a-11, 13a-13, and 12b-20 thereunder.

## COUNT SIX

### DEFENDANT LETZELTER'S
### RECORDKEEPING VIOLATIONS OF SECTION 13(b)(5) OF THE
### SECURITIES EXCHANGE ACT OF 1934 AND RULE 13b2-1

47. Paragraphs 1 through 46 are hereby reincorporated and realleged by reference.

48. Rule 13b2-1, promulgated under Section 13(b) of the Exchange Act prohibits any person from falsifying any book or record subject to Section 13(b)(2)(A).

49. Between June 1991 -- January 1993, defendant Letzelter violated Section 13(b)(5) and Rule 13b2-1 by falsifying invoices to support Sheffield's material overstatement of revenues and its intentional overstatement of inventory in Sheffield's financial and accounting records.

50. By reason of the foregoing, defendant Letzelter violated, and, unless enjoined, will again violate Section 13(b)(5) and Rule 13b2-1.

WHEREFORE, the SEC respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that defendants Hammer and Letzelter committed the violations of the federal securities laws alleged herein.

### II.

### Permanent Injunction

Issue a Permanent Injunction, restraining and enjoining:

(a) defendants Hammer and Letzelter, their officers, agents, servants, employees, attorneys, and all persons in active concert

- 14 -

or participation with them, and each of them, from violating Section 17(a) of the Securities Act, [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder, and Section 13(b)(5) of the Exchange Act [15 U.S.C. §§ 78m(b)(5)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1], thereunder; and

(b) defendant Hammer, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with him, and each of them, from violating Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), (b)(2)(A), and (b)(2)(B)] and Rules 13a-1, 13a-11, 13a-13, and 12b-20 [17 C.F.R. §§ 240.13a-1, 240.13a-11, 240.13a-13, 240.12b-20], thereunder.

### III.

### Officer And Director Bar

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)], enter an order barring defendants Hammer and Letzelter from acting as officers or directors of any issuer required to file reports pursuant to Section 12 of the Exchange Act as a result of these defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### IV.

### Further Relief

Grant such other and further relief as may be necessary and appropriate. Further, the SEC respectfully requests that this Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby

be entered, or to entertain any suitable application or motion by the SEC for additional relief within the jurisdiction of this Court.

Respectfully submitted,

Charles V. Senatore
Regional Director
Florida Bar No. 308935

Christian R. Bartholomew
Senior Trial Counsel
S.D. Fla. Bar No. A-5500258

Russell C. Weigel III
Chief, Enforcement Branch No. 2
Florida Bar No. 822159

DATE:  July ___, 1997

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
1401 Brickell Avenue, Suite 200
Miami, Florida  33131
Telephone: (305) 982-6344
Facsimile: (305) 536-7465

- 16 -

# CIVIL COVER SHEET

97-6892
CIV-ZLOCH

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

MAGISTRATE JUDGE
SELTZER

## I (a) PLAINTIFFS

SECURITIES AND EXCHANGE COMMISSION

## DEFENDANTS

MITCHELL A. HAMMER and
JOSEPH LETZELTER, JR.

FILED BY
97 JUL 27
CLERK U.S. DIST. CT.
S.D. OF FLA.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Broward
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

A/Broward/0:97CV6892/WJZ/BSS

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Christian Bartholomew, Esq. 982-6344
Russell Weigel III 982-6355      SEC, 1401
Brickell Ave.  Suite 200, Miami, FL 33131

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

ATTORNEYS (IF KNOWN)
Scott Srebnick, Esq.
1899 S. Bayshore Dr.
Miami, FL 33133

Mark A. Jacobs, Esq.
Bergman & Jacobs
777 Brickell Ave.,#780
Miami, FL 33131

## II. BASIS OF JURISDICTION
(PLACE AN X ONE BOX ONLY)

- ☒ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(For Diversity Case Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

15 U.S.C. § 77q(a), 15 U.S.C. § 78j(b), 17 C.F.R. §240.10b-
15 U.S.C. § 78m(b)(5), 17 C.F.R. § 240.13b2-1, 15 U.S.C. §§ 78m(a), (b)(2)(A), and (b)(2)(B),
17 C.F.R. §§ 240.13a-1, 240.13a-11, 240.13a-13, 240.12b-20. Violations of the antifraud and
books and records provisions of the
federal securities laws.

IVa. __5__ days estimated (for both sides) to try entire case

## V. NATURE OF SUIT
(PLACE AN X IN ONE BOX ONLY)

| A CONTACT | A TORTS | B FORFEITURE / PENALTY | BANKRUPTCY A | OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personnel Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending B | ☐ 660 Occupational Safety/Health | **B SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 380 Other Personnel Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury |  | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **A FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment | Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General * | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other * |  |  | ☐ 890 Other Statutory Actions * |
| ☐ 290 All Other Real Property |  | ☐ 550 Civil Rights * A or B |  |  | * A or B |

## VI. ORIGIN
(PLACE AN X IN ONE BOX ONLY)

- ☒ 1. Original Proceeding
- ☐ 2. Removed From State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Refiled
- ☐ 5. Transferred from another district (Specify)
- ☐ 6. Multidistrict Litigation
- ☐ 7. Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT
CHECK IF THIS IS A ☐ CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

Permanent Inj.

Check YES only if demanded in complaint.
JURY DEMAND: ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions):
JUDGE _____   DOCKET NUMBER _____

DATE  7/25/97

SIGNATURE OF ATTORNEY OF RECORD
Russell C. Weigel III

UNITED STATES DISTRICT COURT
S/F I-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. _____

Date Paid: _____

Amount: _____

M/fp: _____